# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IRA A. JOHNSON, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. No. 08-3670 |
| | : | |
| PAUL K. SMEAL, et al., | : | |
| Respondents. | : | |

## O R D E R

*Pro se* Petitioner Ira Johnson objects to Magistrate Judge Wells's recommendation that I deny habeas relief.  (Doc. Nos. 73, 74); 28 U.S.C. § 2254.  I will overrule Petitioner's Objections, adopt Judge Wells's Report and Recommendation, and deny the Petition.

## I.   LEGAL STANDARDS

I must review *de novo* those portions of Judge Wells's Report to which timely, specific objections have been made.  28 U.S.C. § 636(b)(1)(C).  I may "accept, reject, or modify, in whole or in part" Judge Wells's findings or recommendations.  Id.; Brophy v. Halter, 153 F. Supp. 2d 667, 669 (E.D. Pa. 2001).  As to those portions to which no objections have been made, I must "satisfy [myself] that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to the 1983 amendment; see Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (district court must "afford some level of review" when no objections have been made).

I may grant habeas relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The state court's decision must be "objectively unreasonable";

I may not grant relief "merely because [I] conclude that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision . . . simply because the federal court disagrees with the state court.").

I must conduct an evidentiary hearing "unless the [§ 2254] motion and files and records of the case show conclusively that [the petitioner] is not entitled to relief." United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

Finally, I must construe Petitioner's pleadings liberally. Rainey v. Varner, 603 F.3d 189, 198-200 (3d Cir. 2010).

## II.    BACKGROUND

The Pennsylvania Superior Court summarized the underlying facts:

> [Petitioner] was convicted in the shooting death of Stepfon Copper, inside the deceased's apartment at 917 North 16th Street, Philadelphia on February 18, 2000.
>
> At trial, Darrell Williams testified that on February 18, 2000, when [Williams] was 13 years of age, he, [Petitioner,] and the deceased, were sitting inside the deceased's third floor apartment playing music and watching television. [Petitioner] was playing with a .25 caliber handgun.
>
> After about one hour, [Petitioner] asked the deceased if he had an audiotape of a group called The Lox. The deceased said that it was in his automobile which was parked outside the building. The deceased gave Mr. Williams the keys to his car and asked him to get the tape. Mr. Williams testified that he went downstairs and retrieved the tape from the car. As he was about to reenter the building, he heard what sounded like a gunshot coming from Mr. Copper's apartment. Mr. Williams proceeded into the building and as he approached the stairs to the third floor, he heard a second shot. He left the building and ran to a location across the street. He watched the building for more than five minutes from this vantage point. He saw [Petitioner] exit the building with his hands in his pockets and looking left and right. Mr. Williams later gave a statement to police. He gave the tape and the car keys to the police.
>
> Mr. Williams testified that during the time he was playing with the gun, [Petitioner] told the deceased, "Stephon, you burnt me for that gun, it's cool though, it's cool." Mr. Williams testified that [Petitioner] and the deceased did not argue in his presence. Mr. Williams testified that [Petitioner] never pointed the gun at the deceased in his presence.

> Joyce Robinson testified that she lived in a second floor apartment in the building. On February 18, 2000 at about 7:30 p.m., she heard a thumping noise coming from the hall. She opened her apartment door and saw [Petitioner] at the door to the deceased's apartment.
>
> Matrice Copper testified that she was the deceased's sister and shared the apartment with him. On February 18, 2000, at about 6:30 p.m. she was in her automobile when she observed [Petitioner], the deceased and Mr. Williams pull up in another automobile. She returned to the building around 9 p.m. where she learned of the shooting. She went to the Homicide Division and returned home at approximately 2:30 the following morning. She discovered that approximately $300 which she had seen the deceased place under the mattress earlier on December [sic] 18 was missing.

Commonwealth v. Johnson, No. 554 EDA 2018, slip op. at 2-3 (Pa. Super. Ct. Feb. 21, 2019) (quotations omitted).  On August 19, 2003, the Superior Court affirmed Petitioner's life sentence. Id. at 3.  The Pennsylvania Supreme Court denied allocatur on March 2, 2004.  Id.  A detailed description of the case's subsequent history is required to understand Petitioner's present Objections.

After his direct appeal, Petitioner has filed three state post-conviction relief petitions, the first on June 15, 2004, with Petitioner acting *pro se*.  Commonwealth v. Johnson, No. 41 EDA 2014, slip op. at 2 (Pa. Super. Ct. Dec. 12, 2014).

> Counsel was appointed and filed an amended petition maintaining that trial counsel was ineffective for interfering with [Petitioner's] right to testify on his own behalf. Following hearings, the petition was denied and [Petitioner] filed a notice of appeal. On March 12, 2007, [the Superior Court] affirmed the dismissal, and [Petitioner's] petition for allowance of appeal to the Pennsylvania Supreme Court was denied August 15, 2007. Commonwealth v. Johnson, 927 A.2d 652 (Pa. Super. 2007) (unpublished memorandum), appeal denied, 929 A.2d 1161 (Pa. 2007).
>
> On October 2, 2007, [Petitioner] filed a second pro se PCRA petition. Therein, he presented a claim that his prior counsel was ineffective for failing to conduct an investigation of his claim that he was far from the crime scene when the murder occurred. He also averred that he had new evidence that the investigator used by trial counsel was convicted of fraud and other criminal acts and that the investigation of his case was inadequate. Counsel was appointed and subsequently filed a Turner/Finley letter, indicating that the issues were untimely and that there were no additional issues which could be raised. [Petitioner's] second PCRA petition was denied on February 5, 2009. On February 16, 2010, this court affirmed the PCRA court's denial of relief, finding that the petition was untimely and no

3

exceptions applied. Commonwealth v. Johnson, 996 A.2d 546 (Pa. Super. 2010), appeal denied, 9 A.3d 627 (Pa. 2010).

On August 24, 2010, while [Petitioner] was petitioning for allowance of appeal before our supreme court, [he] purportedly became aware of new facts that would affect his conviction. A fellow inmate, Terrence Johnson, signed an affidavit on September 28, 2010, in which he claimed to have been present outside 916 North 17th Street on the evening Copper was murdered. [Terrence Johnson] averred that he saw [Petitioner] leave the residence. According to [Terrence] Johnson, who was 12 years old at the time of the murder, he then heard the victim call out to [Petitioner] from a third-floor window, asking him to come back. [Terrence] Johnson, however, admitted in the affidavit that he did not know if [Petitioner] had returned. [Terrence] Johnson did not know [Petitioner] had been charged with the crime.

On October 15, 2010, within 60 days of the date [Petitioner] claimed to have learned of [Terrence] Johnson's information, [Petitioner] filed a pro se PCRA petition. The PCRA court, however, rejected the petition as prematurely filed as [Petitioner's] application for allocatur from the denial of his second PCRA petition was still pending.

The Supreme Court of Pennsylvania denied [Petitioner's] petition for allowance of appeal on November 1, 2010. (Docket #41.) On November 10, 2010, [Petitioner] re-filed his third pro se PCRA petition. (Docket #42.) Pursuant to Pa. R. Crim. P. 907, on April 27, 2011, the PCRA court gave notice of its intention to dismiss [Petitioner's] PCRA petition without a hearing, indicating the petition was untimely filed more than 60 days after [Terrence] Johnson purportedly came forward. (Docket #43.) A panel of this court vacated the dismissal and remanded the matter for consideration on the merits relying on Commonwealth v. Lark, 746 A.2d 585, 588 (Pa. 2000) (where an appellant's PCRA appeal is pending before a court, a subsequent petition cannot be filed until the resolution of the pending PCRA petition; the subsequent petition must be filed within 60 days of the date of the order which finally resolves the previous petition rather than the date the new facts are discovered). Commonwealth v. Johnson, 48 A.3d 474 (Pa. Super. 2012) (unpublished memorandum).

On July 25, 2012, [Petitioner], now represented by counsel, filed an amended third PCRA petition to which he attached the affidavit of [Terrence] Johnson. In anticipation of an evidentiary hearing based on the affidavits, [Petitioner] was transferred to SCI Huntington where he came into contact with Paul Simmons. After speaking with [Petitioner], Simmons agreed to submit an affidavit stating that he recalled taking a bus to Reading with [Petitioner] on the night of the murder. He remembered the evening as [Petitioner] lent him his cell phone and let him read his newspaper. A second amended PCRA petition was filed on April 23, 2013, alleging that Simmons was an after-discovered alibi witness and included Simmons' "unsworn affidavit," [Petitioner's] account of the events, and correspondence relating to bus schedules. The PCRA court denied a hearing on this second after-discovered witness but did not provide a reason on the record.

An evidentiary hearing was held on December 20, 2013. At the hearing, testimony was presented that on September 12, 2012, [Terrence] Johnson told a

4

defense investigator that the affidavit was untrue and that he would disavow it if called to testify. (Notes of testimony, 12/20/13 at 31-38.) At an evidentiary hearing, [Terrence] Johnson repudiated the contents of his affidavit. He testified that he had no recollection of the events of February 18, 2000. He confirmed that his affidavit was untrue and testified that he was not outside of the building on that date. "That's why I've been trying to tell you I wanted to withdraw my affidavit." [Terrence] Johnson did not write the affidavit, in which his name was misspelled; he only agreed to sign it as he wanted to help out his sister's former neighbor. (Id. at 7-9, 15-16, 23-31, 35-37.) The PCRA court dismissed the petition, and [Petitioner] has filed a notice of appeal.

2014 Super. Ct. Op. at 2-6 (footnotes omitted).

On appeal, Petitioner argued that he was entitled to relief based on the new evidence provided by Terrence Johnson and Paul Simmons. Id. at 6. Like the PCRA Court, the Superior Court rejected Terrence Johnson's affidavit, because he had disavowed it at the evidentiary hearing. Id. at 6-9. Next, the Superior Court concluded that Petitioner had waived his claim concerning Simmons, because he had failed to obtain permission from the PCRA Court to amend his petition to add the claim. Id. at 9-10 (citing Commonwealth v. Porter, 35 A.3d 4, 12 (Pa. 2012); Pa. R. App. P. 302(a)).

In his final PCRA petition, filed on September 16, 2015, Petitioner claimed that Darrell Williams had recanted significant parts of his trial testimony. 2019 Super. Ct. Op. at 4, n. 4. The PCRA Court denied relief, finding that Williams' recantation was not credible. Id. at 11-12. The Superior Court found no reason to upset the PCRA Court's credibility determination and accordingly affirmed the denial of PCRA relief. Id.

During this state post-conviction litigation, Petitioner filed the instant Habeas Petition on July 28, 2008, raising numerous claims. (Doc. No. 1.) This Petition was stayed while Petitioner engaged in his lengthy pursuit of state collateral relief. (Doc. No. 6.) After numerous amendments, Judge Wells ordered Petitioner to select the cognizable claims he wished to pursue. On January 24, 2020, Petitioner selected the following claims: (1) the evidence adduced at trial was insufficient

5

to sustain his first-degree murder conviction; (2) trial counsel ineffectively failed to inform Petitioner of his right to testify; (3) trial counsel ineffectively provided Petitioner unreasonable advice about the risks of testifying; (4) trial counsel ineffectively failed to investigate adequately Petitioner's purported alibi; (5) direct appellate counsel ineffectively failed to present and preserve a challenge to the weight of the evidence used to sustain Petitioner's murder conviction; (6) direct appellate counsel ineffectively failed to present and preserve challenges to the sufficiency and weight of the evidence used to sustain Petitioner's robbery conviction; (7) direct appellate counsel ineffectively failed to present and preserve a weight of the evidence challenge to Williams' trial testimony; and (8) Petitioner is actually innocent.  (Petitioner's Cognizable Claims at 3-41, Doc. No. 50.)  Petitioner subsequently withdrew claims six and seven. (Doc. No.  72, 43-44.)

In her Report and Recommendation, Judge Wells concluded that claims (1) and (5) are time-barred, claim (4) is procedurally defaulted, and the remainder of Petitioner's claims lack merit.  (R&R 7, Doc. No. 73.)  Petitioner now raises seven Objections, which I will overrule. (Objs. 1, Doc. No. 74.)

## III.   OBJECTIONS

*Objection 1 – Time Bar of Claim 1*

Judge Wells found that claim (1)—challenging the sufficiency of the evidence—was time barred because Petitioner did not include it in his original federal Petition.  (Id. at 8.)  I will overrule this Objection because the underlying claim is meritless.

Petitioner urges that he included a sufficiency claim in his Petition,  asserting, as his fourth ground for relief, that he was being "ILLEGALLY DETAINED," and gave as 'supporting facts' that: the elements of robbery and first-degree murder were not proved beyond a reasonable doubt at his trial.  (Pet., Doc. No. 1.)  Noting that *pro se* filings (such as the Petition) are to be construed

liberally, Petitioner contends that the 'illegal detention' ground should be read as asserting a sufficiency claim.  I agree.  Although Petitioner's listed 'ground'—that he was being 'illegally detained'—is vague, the 'supporting facts' clarify what he was, inartfully, seeking to argue.  Cf. Rainey v. Varner, 603 F.3d 189, 198-200 (3d Cir. 2010).

The sufficiency claim is nonetheless meritless.  On direct appeal, the Superior Court considered and rejected it.  See Commonwealth v. Johnson, No. 1316 EDA slip op. 9-11, (Pa. Super. Ct. 2003) ("Viewing all of the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth satisfied its burden of proof on all of the elements of first-degree murder. . . .[T]he Commonwealth presented sufficient evidence to establish all of the elements of the crime of first-degree murder beyond a reasonable doubt."); see also Jackson v. Virginia, 443 U.S. 307, 324 (1979) ("A review of the record in the light most favorable to the prosecution convinces us that a rational factfinder could readily have found the petitioner guilty beyond a reasonable doubt of first-degree murder . . . .")  That determination was not "objectively unreasonable," as it must be to warrant habeas relief.  See Wright v. Superintendent Graterford SCI, 732 Fed. Appx. 121, 123-24 (3d Cir. 2018) (a federal habeas court's sufficiency inquiry is "doubly deferential" to state court findings).

The Superior Court's rejection was reasonable because the trial evidence showed that: Petitioner and the victim were alone in an apartment moments before Williams—whom Petitioner had just prompted to leave—heard two gunshots; Petitioner had announced that the victim "burnt [him] for that gun"; Williams had seen a gun in Petitioner's hands just before the shooting; the caliber of that gun matched the fired cartridge casings recovered from the victim's apartment and the bullets extracted from the victim himself; two bullets were recovered from the victim's body, matching the number of gunshots that Williams heard; both Williams and a neighbor saw

Petitioner leave the apartment just after the shooting, behaving suspiciously.  See 2003 Sup. Ct. Op. at 1-3.  The Superior Court's sufficiency finding was thus reasonable.

*Objections 2, 3, & 4 – Default of Claim 4*

Judge Wells concluded Petitioner's claim (4)—that trial counsel ineffectively failed to investigate adequately an alibi defense—was procedurally defaulted because the state court determined that it was time barred.  (R&R at 10.); see Glenn v. Wynder, 743 F.3d 402, 409 (3d Cir. 2014) (PCRA time bar constitutes independent and adequate state law ground).  In his second, third, and fourth Objections, Petitioner challenges this conclusion.

First, Petitioner argues that he can show cause to excuse the default of claim (4) because "the facts upon which [it is] predicated, simply did not exist prior to the expiration of time to raise the claim . . . ."  (Objs. 2.)  He points to the revelations about his trial counsel's investigator, which purportedly did not come to light until some eight months after the expiration of the deadline to seek PCRA relief.  Yet, Petitioner does not link the investigator's malfeasance in unrelated cases to Petitioner's own, as Judge Wells correctly stated: "Absent such evidence, Petitioner cannot demonstrate that [the investigator's] conduct was an objective factor external to the defense that prevented him from presenting his defaulted claim of [ineffectiveness.]"  (R&R 13); see Murray v. Carrier, 477 U.S. 478, 88 (1986).

Second, Petitioner seems to object that the investigator's actions are only tangentially relevant, as his claim is focused on the failure of  trial counsel to conduct an adequate investigation. (Objs. 2-3.)  Although Petitioner is correct that the gravamen of a Sixth Amendment claim must be ineffective assistance *of counsel* (not of counsel's investigator), this misses the point; Petitioner is unable to show cause to excuse his default absent a showing that the investigator's malfeasance

*in his own case* was a fact that did not come to light until after the state deadline had passed.  As he makes no such showing, the deadline is sufficient to default his claim here.

Third, Petitioner objects that cause to excuse his default lies in the ineffective assistance of his first PCRA counsel, Sondra Rodrigues.  (R&R 13); see Martinez v. Ryan, 566 U.S. 1, 9 (2012).  Petitioner argues that Rodrigues was ineffective for "failing to Raise Trial Counselor's Ineffectiveness [regarding the alibi investigation]" in the first PCRA Petition.  (Traverse 28, Doc. No. 72.)  To succeed on this claim, Petitioner must demonstrate both that Rodrigues's performance was deficient and that this deficiency was prejudicial.  See Strickland v. Washington, 466 U.S. 668, 700 (1984).  Showing deficient performance requires Petitioner to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.

Petitioner has pointed to no specific steps that Rodrigues should have taken to locate exculpatory evidence.  To the contrary, Petitioner objects that Strickland does not require him to "list every, or any for that matter, steps a trained and presumed competent counselor should have" taken.  This is incorrect.  (Objs. 3); see Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) ("[A petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense.")

Moreover, Petitioner is unable to show that Rodrigues's 'errors' caused prejudice.  As Judge Wells rightly concluded: "None of the alibi evidence Petitioner has uncovered is credible." (R&R 14.)  Accordingly, PCRA counsel's omission of the failure-to-investigate claim was not prejudicial: there is no credible, exculpatory evidence that trial counsel could have discovered.

*Objections 5 & 6 – Default of Claims 1 & 5*

9

Judge Wells concluded that "Petitioner cannot establish that he is actually innocent, hence, his untimely claims cannot be considered on their merits." (R&R 10.)  Petitioner apparently argues that his actual innocence is sufficient cause to excuse the default of claims (1) and (5).  (Objs. 4); see McGuiggin v. Perkins, 569 U.S. 383, 386 (2013).

Petitioner argues that Judge Wells impermissibly discounted the reliability and weight of the Simmons Affidavit.  (Objs. 4.)  I disagree.  The affidavit was produced 13 years after trial— the product of a 'chance' jail-house encounter.  Moreover, as the state courts found, Petitioner has a history of suborning others to fabricate exculpatory evidence.  Finally, Simmons's affidavit is not in the least reliable.  (R&R 4-5); see Monk v. Gonzalez, 583 Fed. Appx. 674, 677 (9th Cir. 2014) (finding affidavit unreliable which was: remote in time from the crime; lacking in detail; produced by a fellow inmate; and contradicted by trial evidence).  Accordingly, even crediting Petitioner's fifth Objection–that reliable alibi evidence could theoretically exonerate him—I nonetheless agree with Judge Wells that the Simmons Affidavit is not so compelling that no reasonable juror reviewing it would have convicted Petitioner.  See McGuiggin, 569 U.S. at 399 (citing Sclup v. Delo, 513 U.S. 298, 327 (1995)).

Petitioner urges that had his trial counsel conducted a better investigation, then "the odds of finding Simmons much sooner" would have improved.  (Objs. 4.)  This is no more than rank speculation.  Petitioner has not shown how any investigator would have discovered Simmons in 2000.  Petitioner also presumes that, had Simmons somehow been located in 200, he would have provided the same statements he gave 13 years later.  More to the point, Petitioner impermissibly mixes the 'actual innocence' and 'ineffective assistance' grounds to create cause to excuse procedural default.  In any event, Petitioner has made out neither counsel's ineffectiveness nor his own innocence.

10

Insofar as Petitioner's Objections 5 and 6 also assail Judge Wells's rejection of Petitioner's freestanding actual innocence claim (8), I will also overrule them in that respect, for the reasons already stated.

*Objection 7 – Merits of Claims 2 & 3*

Judge Wells concluded that Claims (2) and (3)–that trial counsel failed to inform Petitioner of his right to testify and gave unreasonable advice about the risks of testifying—are meritless. (R&R 14-19.)  I agree and will overrule this last Objection.

Claim (2) is defeated by state court fact-finding—binding on this Court—that Petitioner's trial counsel correctly informed him regarding his right to testify and the risks of doing so.  (R&R 18) (citing Commonwealth v. Johnson, No. 939 EDA 2006, slip op. at 4 (Pa. Super. Ct. Mar. 12, 2007)); see Miller-El v. Cockerell, 537 U.S. 322, (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding").

Petitioner apparently urges that the state court determination was unreasonable: "Nothing in the record supports the conclusion that Petitioner was made aware that the right to testify belong solely to him or that he 'could,' but not automatically 'WOULD' be impeached if he testified . . . ."  (Objs. 5.)  This argument is belied by the state court record, on which the state courts properly relied in rejecting Petitioner's claim.  See Johnson, No. 939 EDA at 4-6.

Claim (3) fails for the same reason: the state courts rejected it based on the record evidence. (See id.)  Petitioner argues that Judge Wells and the state courts have "engaged in adversarial conjecture and surmise" by "automatically assum[ing]" Petitioner would have been impeached with his prior robbery conviction had he testified.  (Objs. 5-6.)  Once again, Petitioner entirely

misses the point: his counsel was not deficient for advising him against testifying because Petitioner was *vulnerable* to such impeachment, as Judge Wells rightly concluded.  (R&R 19.)

**IV.    CONCLUSION**

As the remainder of Judge Wells's Report and Recommendation is plainly correct, I will adopt it and deny relief.


\*\*\*


**AND NOW**, this 3rd day of February, 2021, upon careful and independent consideration of Ira Johnson's Petition for Writ of Habeas Corpus (Doc. No. 1), and after review of the Report and Recommendation of Magistrate Judge Wells (Doc. No. 73) and Petitioner's Objections (Doc. No. 74), it is hereby **ORDERED** that:

I.    Because the record shows conclusively that Petitioner is not entitled to relief, I will not conduct a hearing;

II.    Petitioner's Objections to the Report and Recommendation (Doc. No. 74) are **OVERRULED**;

III.    Judge Wells's Report and Recommendation (Doc. No. 73) is **APPROVED** and **ADOPTED**.

IV.    The Petition for a Writ of Habeas Corpus (Doc. No. 1) is **DENIED** and **DISMISSED with prejudice**;

V.    A Certificate of Appealability shall **NOT ISSUE** because Petitioner has not made a substantial showing of the denial of a constitutional right.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000);

VI.    The **CLERK OF COURT** shall **CLOSE** this case.

 

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.